**PETITION UNDER 28 USC2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

2013 MAY 16  P 2: 23

SCOTT TRAUDT,
Petitioner

v.                                                          C.A. No.  1:13-cv-234

RESPONDENT
Joseph Foster,
Attorney General of the State of
New Hampshire

And

STATE OF NEW HAMPSHIRE

<u>**PETITION**</u>

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    **Grafton Superior Court**
    3785 Dartmouth College Highway
    North Haverhill, NH 03774

    (b) Criminal docket or case number:

    07-S-223 & 246

2.  (a) Date of judgment of conviction (if you know): October 22, 2008

    (b) Date of sentencing (if you know): January 27, 2009

3.  Length of sentence: 1-3 years, stand committed

3.  In this case, were you convicted on more than one count or of more than one crime?

    YES

5.  Identify all crimes of which you were convicted and sentenced in this case:

    Simple assault  (RSA 631-2(a); RSA 651:6(g) (Extended Term of Imprisonment); RSA 644:2 (Disorderly Conduct).

    The disorderly conduct was charged as a "violation."

6.  (a) What was your plea? NOT GUILTY

    (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what di you plead not guilty to? N/A

(c) If you went to trial, what kind of trial did you have? JURY

7. Did you testify at a pretrial hearing, trial, or a post trial hearing?

I testified at trial and a post-trial sentencing hearing on January 27, 2009.

8. Did you appeal from a judgment of conviction? YES

9. If you did appeal, answer the following:

    (a) Name of court:

      New Hampshire Supreme Court

    (b) Docket or case number:

      2009-0150

    (c) Result:

      The judgment of conviction was affirmed on both issues raised.

    (d) Date of result (if you know):

      February 4, 2010

    (e) Citation to the case:

    (f) Grounds raised:

      1.  Was it error for the Trial Court to admit evidence of uncharged misconduct without benefit of a hearing, findings of fact or rulings of law, where the evidence was only relevant to propensity of Defendant to commit the crimes charged?

      2.  Did the Trial Court err when it denied the Defendant's Motion to Suppress Evidence obtained as a result of an illegal seizure of his person?

      3.  Did the Trail Court err by not dismissing the matter where the State shifted the burden?

  (g) Did you seek further review by a higher state court? NO

  (h) Did you file a petition for certiorari to the United States Supreme Court? NO

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any other state court? YES

11. If your answer to Question 10 was "Yes," give the following information:

    (a)  (1) Name of court: Grafton Superior Court

        (2) Docket or case number (if you know): 07-S-223 & 246

        (3) Date of filing:  November 10, 2008

        (4) Nature of the proceeding:

My trial attorney, Mark Sisti, filed a Motion to Set Aside the Verdicts.

(5) Grounds raised:

The judgment of conviction on Officer Roberts on one simple assault count was inconsistent with the acquittal on the other charge against Officer Smolenski because the jury had the same witnesses, the same lack of physical evidence of assault, and contradictory testimony. In addition, there had been no evidence that I had interfered with the police roadside field sobriety test of Victoria Traudt because there had been no threat of harm from me, no act, no assault, no contact with the officer (Roberts) doing the field sobriety test.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? NO

(7) Result:

The Grafton Superior Court (Judge Peter Bornstein) denied the motion. There was no order written explaining the grounds for the decision.

(8) Date of result (if you know): November 25, 2008.

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Grafton Superior Court

(2) Docket or case number (if you know): 07-S-223 & 246

(3) Date of filing:  December 3, 2008.

(4) Nature of the proceeding:

I filed a Defendant's Second Motion to Set Aside the Verdict or in the Alternative Motion for a New Trial

(5) Grounds raised:

I failed this motion pro se on grounds that the State failed to disclose evidence of Officer Robert's past lawsuit against him and witness statements in that suit about his propensity for violence while employed in another police department prior to trial, that the prosecutor overreached and was malicious in questioning me about a maritime admiralty claim for personal injury I had sustained 12 years prior to trial, for deliberately shifting the burden to me by asking me to give theories on what evidence was introduced, and for telling the jury multiple times that I had failed to prove my innocence. There was also an ineffective assistance of counsel claimed regarding witness introduction and other evidence.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? NO

(7) Result:

The Grafton Superior Court (Judge Peter Bornstein) denied the motion.

(8) Date of result (if you know): December 30, 2008

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: Grafton Superior Court

(2) Docket or case number (if you know): 07-S-223 & 246

(3) Date of filing:  December 3, 2008

(4) Nature of the proceeding:

I filed a Motion to Compel the Production of Documents and Identify Certain Person and Actions and Defendants Third Motion to Set Aside the Verdict or in the Alternative to Give Defendant a New Trial.

(5) Grounds raised:

The police during the trial admitted an internal investigation was going on into the conduct of the police officers during the course of my arrest and none of their statements or evidence collected in that investigation was provided to myself or trial counsel.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? NO

(7) Result:

The Grafton Superior Court (Judge Peter Bornstein) denied the motion.

(8) Date of result (if you know): December 30, 2008.

(d) If you filed any fourth petition, application, or motion, give the same information:

(1) Name of court: Grafton Superior Court

(2) Docket or case number (if you know): 07-S-223 & 246

(3) Date of filing: December 3, 2008

(4) Nature of the proceeding:

I filed Defendant's Fourth Motion to Set Aside the Verdict or in the Alternative Get a New Trial.

(5) Grounds raised:

I raised the recently decided decision in **Brendlin v. California (127 S. Ct. 2400 (2007))** that I was illegally detained and arrested at a traffic stop that was ruled to be illegal and without probable cause, thereby trying to tie my subsequent arrest as the not only the "fruit of a poisonous tree" chain of events but also to raise the issue of since I was already "arrested" by the illegal stop, and wasn't leaving the scene or attempting to flee, how could further orders precluding me from watching an illegal field sobriety test be constitutionally valid?

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? NO

(7) Result:

The Grafton Superior Court (Judge Peter Bornstein) denied the motion and my attorney immediately filed notice of discretionary appeal to the New Hampshire Supreme Court.

(8) Date of result (if you know): December 30, 2008.

(e) If you filed any fifth petition, application, or motion, give the same information:

(1) Name of court: Grafton Superior Court

(2) Docket or case number (if you know): 07-S-223 & 246

(3) Date of filing: April 6, 2009

4

(4) Nature of the proceeding:

My appellate attorney, Steven Jeffco, filed a Motion for a New Trail Based on Newly Discovered Evidence.

(5) Grounds raised:

An audio enhancement expert had enhanced digitally and with software my detention at the Lebanon Police Department subsequent to my arrest and the Supervising Officer (Roberts- who I was convicted of assaulting) is heard telling Officer Smolenski, who is writing the charging documents, that "My intention is that we all say he did..."

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? YES

(7) Result:

The Grafton Superior Court (Judge Peter Bornstein) denied the motion.

(8) Date of result (if you know): July 30, 2009.

(f) If you filed any sixth petition, application, or motion, give the same information:

(1) Name of court: Grafton Superior Court

(2) Docket or case number (if you know): 07-S-223 & 246

(3) Date of filing: October 29, 2009

(4) Nature of the proceeding:

Jeffco withdrew from the Superior Court casework and continued to pursue my New Hampshire Supreme Court direct appeal. I filed pro se this Defendant's Motion for Mistrial and in the Alternate Motion for New Trial Based on Rule 98 Discovery Violations and Malicious Prosecution.

(5) Grounds raised:

I argued that there could be no doubt that police withheld **Brady v. Maryland** materials and that the prosecutor's actions during the sentencing hearing conclusively proved malice on her part when she committed fraud upon the court in telling the court that Officer Roberts had been knocked unconscious in my alleged assault. Roberts, in 2013, denied under oath he'd been knocked out or suffered any injury. The prosecutor compounded the issue by telling a news reporter that Roberts had suffered a concussion, when she knew he hadn't, further vilifying petitioner.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? NO

(7) Result:

The Grafton Superior Court (Judge Peter Bornstein) denied the motion.

(8) Date of result (if you know): November 4, 2009

(g) If you filed any seventh petition, application, or motion, give the same information:

(1) Name of court: Grafton Superior Court

(2) Docket or case number (if you know): 07-S-223 & 246

(3) Date of filing:  May 5, 2011

(4) Nature of the proceeding:

My attorney, David Ruoff, filed a Motion for a New Trail Based on Ineffective Assistance of Counsel.

(5) Grounds raised:

A criminal defense attorney fails to provide effective assistance of counsel by arguing a theory of defense that is inconsistent with the defendant's sworn testimony.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? NO

(7) Result:

The Grafton Superior Court (Judge Peter Bornstein) denied the motion and my attorney immediately filed notice of discretionary appeal to the New Hampshire Supreme Court.

(8) Date of result (if you know):  July 15, 2011

Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: YES. November 30, 2009. Motion to File Pro Se Supplemental Brief in **State v. Scott Traudt, No. 2009-0150.**

(2) Second petition: YES. November 30, 2009. Motion to File Pro Se Supplemental Brief in **State v. Scott Traudt, No. 2009-01**

(3) Third petition: NO.

(4) Forth petition: YES. Collateral estoppel aspect filed in direct appeal to New Hampshire Supreme Court by appellate counsel, Steven Jeffco, September 1, 2009, but appeal not based on **Brendlin.**

(5) Fifth petition: NO.

(6) Sixth petition: YES. November 30, 2009. Motion to File Pro Se Supplemental Brief in **State v. Scott Traudt, No. 2009-0150.**

(7) Seventh petition: YES. November 30, 2009. Motion to File Pro Se Supplemental Brief in **State v. Scott Traudt, No. 2009-0150.**

(8) Eighth petition: YES. On November 14, 2011 a discretionary appeal was filed in the New Hampshire Supreme Court.

If you did not appeal to the highest state court having jurisdiction, explain why you did not:

Some issues were appealed to the New Hampshire Supreme Court and some I attempted to brief but was not afforded an opportunity to by the New Hampshire Supreme Court.

Immediately post conviction in December, 2008, I retained Attorney Steven Jeffco of Portsmouth, NH to represent me in the sentencing phase and the appellate phase. Jeffco filed a notice of appeal to the New Hampshire Supreme Court and told me he would be briefing the issues raised in my *pro se* filings after I terminated Mark Sisti. He also told me he would provide me with a copy of the brief in draft form before it was filed.

Jeffco appealed only three issues, as listed above in the direct appeal. He neglected to brief one of the issues (impermissible shifting of the burden by the State), so because it wasn't briefed, the New Hampshire Supreme Court would not hear it. That critical issue was one of the stronger issues I felt I had.

Of the petitions listed above I filed a Motion to File Supplemental Briefs on critical issues Jeffco did not include in his brief to the New Hampshire Supreme Court on November 20, 2009. That was denied by the New Hampshire Supreme Court by Justice Conboy without hearing on December 7, 2009. I am not sure whether that constitutes appealing or not appealing those issues as I raised them in the supplemental filing but the filing was disallowed with no grounds given or written order.

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by a federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

### GROUND ONE: Ineffective assistance of appellate counsel in violation of petitioner's rights under the 6th Amendment to the US Constitution's right to a fair trial

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

1. Counsel raised three issues on notice of appeal on behalf of petitioner subsequent to petitioner's January 27, 2009 sentencing hearing. Petitioner informed counsel that all the issues raised in the several motions filed by petitioner while pro se subsequent to his termination of trial counsel needed to be raised on appeal. Counsel stated he would execute those wishes. Counsel promised that he would allow petitioner to see a draft of the direct appeal to be filed with the New Hampshire Supreme Court. He did not. Instead, he filed a brief that admitted he "has obtained an audio copy of the closing argument (from petitioner's criminal trial), he inadvertently failed to have the argument transcribed," and thus did not brief one of three issues raised on direct appeal. (**Exhibit A**)(page 19 of "Brief of the Defendant," No. 2009-0150). The New Hampshire Supreme Court dismissed the issue without argument, stating it had not been briefed properly: "We need not address the defendant's argument that the trial court erred by failing to dismiss the case after the prosecutor allegedly engaged in burden shifting during the closing argument, as this issue was not briefed, **see In re Estate of King**, 149 N.H. 226, 230 (2003) (issues raised in notice of appeal but not briefed are deemed waived), nor was a transcript of the closing argument provided. **See Bean v. Red Oak Prop. Mngt.**, 151 N.H. 248, 250-51 (2004) (appellant has burden to provide record sufficient to decide his issues on appeal); see also Sup. Ct. R. 13.

2. At a hearing on a Motion for New Trial (Newly Discovered Evidence) in July of 2009, counsel did not challenge state witness Lt. Daniel Cohen – a Lebanon Police Department officer - as to being an expert witness even though the individual had no credentials in audio or video forensics, and was in fact a wedding DJ, a close personal friend of the police chief in the department that arrested and charged petitioner. Counsel did not object when Lt. Cohen was allowed to give opinion testimony on what was contained in an audio enhancement done by appellant's expert witness, Arlo West, and to explain conduct and speech by Officers Smolenski and Roberts. All this went unchallenged. Petitioner raises that the Motion for a New Trial (Newly Discovered Evidence) that was denied by the trial court should have been filed as part of peitioner's Direct Appeal, and Jeffco was ordered to do so, and it wasn't. Petitioner states the trial court abused its discretion and its findings of law and fact in its order (**Exhibit B**) of July 30, 2009 were an abuse of discretion, and are raised here as part of the overall ineffective claim in Ground One. (Petitioner reserves the right to file a timely amendment to this petition as a further ground for relief if after a preliminary hearing the court finds it warranted.) *In fact, the trial court relied on facts not in evidence – nor would any of petitioner's statements in the DVD have been admissible as petitioner had suffered a frontal lobe injury, a concussion, was in shock, and had a torn rotator cuff in his shoulder, as well as a spinal injury.*

3. Counsel never argued an alternative theory of law in the hearing mentioned above regarding trial counsel's ineffective assistance of counsel in not using the DVD recording that was audio-enhanced even when the judge's

questioning of appellate counsel at the July hearing clearly was instructing him that trial counsel had the DVD recordings in question and did not make use of them and did not insist on a technical review. The hearing was set at that stage for appellate counsel to argue in the alternative that if that was the case, trial counsel had caused harm to petitioner's case, and had not effectively represented him when the expert witness was able to recover instructions from the ranking officer stating that "My intention is that we all say he did ..." regarding collusion in charging defendant, and/or conspiring to write police reports as instructed. The ranking officer – Phil Roberts - was whom petitioner was convicted of assaulting.

4. Counsel refused to file a direct appeal asserting ineffective assistance of trial counsel even after petitioner summarized for him in multiple motions in Grafton Superior Court grounds ranging from failure to call rebuttal witnesses, failure to introduce medical evidence, failure to call medical doctors, promising the jury they'd see medical records and then not introducing them, failure to use an expert police witness and former police officer who had been crucial to identifying the illegality of the initial vehicle traffic stop who also would testify to irregularities in the police reports and the impossibility of the police version of events.

5. Counsel never filed any motion to supplement the record at the New Hampshire Supreme Court after it admitted failing to adequately prepare petitioner's case. The New Hampshire Supreme Court denied the appeal and waived the issue not briefed **(Exhibit N)**.

Petitioner was prejudiced by these actions and lost a significant set of grounds for appeal.

    (b) If you did not exhaust your state remedies on Ground One, explain why:

I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, after I was sent in prison a copy of the brief. It became apparent that counsel had stopped working on the case but had not informed me.

    **(c) Direct Appeal of Ground One:**

        (1) If you appealed from the judgment of conviction, did you raise this issue?

YES. I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, though I did not call it ineffective assistance of appellate counsel, I merely re-filed the issue of the impermissibility of shifting the burden.

        (2) If you did not raise this issue in your direct appeal, explain why:

**(d) Post-Conviction Proceedings:**

        (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

NO.

        (2) If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition:

        Name and location of the court where the motion or petition was filed:

        Docket or case number (if you know):

        Date of the court's decision:

        Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion or petition?

(4)  Did you appeal from the denial of your motion or petition?

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)  If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)  If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO: Impermissible shifting of the burden of proving guilt beyond a reasonable doubt violated petitioner's rights to due process of law as guaranteed by the 5th and 14th Amendments to the US Constitution.**

(a)    Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

1. Prosecutor Nancy Gray in her closing arguments at trial on October 22, 2008 said **(Exhibit C):**

GRAY: Now, look at his list of medical injuries, told about all of these medical injuries, but there are no -- there's no documentation of those injuries. He says he's got a hundred pages of reports. We haven't seen those. He says that he has doctors -- there were doctors on the witness list, but they're not here.

 And she was objected to by petitioner's trial counsel:

 SISTI: Your Honor, could we just approach for a second?

THE COURT: Sure.

 (Sidebar begins at 12:06 p.m.)

 MR. SISTI, Yeah, I have to object. That's a shifting of the burden in production of evidence. The Defendant has absolutely no obligation to call any witnesses on the witness list or not on the witness list. The burden of proof always lies with the State."

      The court sustained the objection.

2.      The prosecutor did it again, and was stopped with a timely objection by petitioner's counsel:

GRAY: Victoria Traudt said that the Defendant's clothes were shredded with blood down the front of his shirt. She said he had blood all down the front. Where's the shirt? There was blood on the pants, but the blood on the pants –

MR. SISTI: Your Honor, just again same objection.

MS. GRAY: Okay. Approach?

The court record confirms that Sisti objected, and there was a caution given to the jury as the objection was sustained.

3.      The cumulative effect of Numbers 1 and 2 above take on even greater weight because trial counsel invited the jury to draw the same inference in his opening and closing remarks by raising the issue – promising the jury they'd see medical records of petitioner's injuries, then not introducing them:

SISTI: Scott Traudt was beaten to the point that he needed medical attention. Scott Traudt -- you will hear evidence in this case -- was feeling the effects of taking a can of pepper spray in the face and in the mouth for eight months. Scott Traudt has a shoulder that requires surgery. Scott Traudt has a disc in his neck that was knocked around. Scott Traudt was beaten.

Trial counsel raised the issue again on direct examination of petitioner at trial:

SISTI: Over a hundred pages of medical records?
PETITIONER: I believe so, sir.

4.    The prosecutor shifted the burden again:

GRAY: Do you have any doctors' reports?
PETITIONER: Yes.
GRAY: Where?
PETITIONER: My attorney has them at his table.
GRAY: And do we have a doctor to back them up?
PETITIONER: Not here right now.
GRAY: Thank you.

Trial counsel did not raise an objection here, and should have.

Trail counsel again presented the medical records as an abstract:

SISTI: You've got the doctors' reports, right?
PETITIONER: Yeah.
SISTI: It was a hundred pages of doctor's reports?
PETITIONER: That's correct.

Petitioner attached his medical records already on file under seal with this court in **Traudt v. Roberts** and incorporates them by reference here as **Exhibit D**, with seal preserved.

Petitioner was prejudiced and suffered clear harm in front of the jury and to his US Constitutional rights.

(b)      If you did not exhaust your state remedies on Ground Two, explain why:

I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it.

(c)      **Direct Appeal of Ground Two:**

(1)      If you appealed from the judgment of conviction, did you raise this issue?

YES. In the Motion to File "Pro Se" Supplemental Brief of November 20, 2009.

(2)      If you did not raise this issue in your direct appeal, explain why:

My direct appeal brief contained this issue in the notice of appeal and was identified in the brief. Appellate counsel failed to provide the court with a transcript of the closing arguments nor did appellate counsel brief the issue.

**(d) Post-Conviction Proceedings:**

(1)     Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

 NO

(2)     If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)     Did you receive a hearing on your motion or petition?

(4)     Did you appeal from the denial of your motion or petition?

(5)     If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)     If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)     If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

 (e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND THREE: Prosecutorial misconduct and overreach in violation of petitioner's 14th Amendment US Constitutional right to due process of law.**

(a)     Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

1.     Prosecutor Gray demonstrated multiple instances in her closing remarks (see Number 2, above, regarding "impermissible shifting of the burden") where she placed the burden of proof on petitioner **(Exhibit C).** This was not done innocently, and was in violation of American Bar Association Rule 3.8 of a prosecutor's special duty of care.

2.     The prosecutor exhibited a multitude of actions in the course and conduct of her trial of the petitioner that demonstrated actual malice towards petitioner, to include:

a. Deliberately lying to the jury about both Officer Roberts' and Officer Smolenski's backgrounds as police officers. She knew Roberts had been sued for misconduct in Springfield, VT, in a 42 USCS 1983 civil rights case in Brattleboro, Vermont, in US District Court for the District of Vermont. The case was **Thurber v. Springfield.**

GRAY: There's been absolutely no evidence of any kind of a disciplinary mark on his record. There's been no evidence of any former complaint. And what's happened in the almost-two years since? He's been promoted to Lieutenant. (Transcript, Page 4).

She also knew Officer Smolenski had prior complaints against him. Through the discovery process in **Traudt v. Roberts**, a 42 USCS 1983 case filed by petitioner in the US District Court for the District of New Hampshire (1:10-cv-000112-jl), petitioner has learned that there was a complaint and disciplinary action taken against Officer Smolenski in either 2006 or 2007. The disciplinary action is currently being reviewed by US District Court Judge LaPlante for its admissibility as evidence in **Traudt v. Roberts**. *The prosecutor lied to the jury*:

GRAY: Corporal Smolenski, 10 years in law enforcement, first in the Navy and then the five years now with the Lebanon Police Department. A certified instructor in the use of a baton, and in OC spray. Yeah, he is very technical. He can tell you all about training because he's an instructor. He knows why they do the things they do, and he knows what they're supposed to do. There, again, there is absolutely no evidence of any disciplinary mark on his record, no evidence of any prior complaint.

b. The prosecutor in her closing arguments put to the jury a misstatement of law, mislead the jury over petitioner's US Constitutional safeguards, and made suggestive references to facts not in evidence. Again, the prosecutor overreached and breached her duties to give petitioner a fair trial. In this specific circumstances, actual prejudice has to be inferred against petitioner due to the fact that she assigned improper motive to petitioner's wife, and made wildly improper statements about the course of post-trial activities by both petitioner and petitioner's wife:

GRAY: And finally she admitted she was charged with more than DWI that morning. She was charged with resisting arrest and detention and simple assault. And she admitted she was
found guilty of resisting arrest and detention and simple assault in the District Court. And she's taken those convictions up on appeal. Those appeals are pending now. And of course she doesn't want the Defendant convicted. If he's found not guilty, it will help with her
appeals.

MR. SISTI: Your Honor, could I approach for a
second?

THE COURT: Yes, you may.
(Sidebar begins at 12:22 p.m.)

MR. SISTI: First of all that's not a correct statement of law. Second of all, the prosecution objected to us consolidating these cases for trial together. All right. So they are separate. One will not affect the other. That is why these particular things were separated on the part of the
State over our request. We wanted them together. We wanted to try them together. All right. Whatever happens to Scott Traudt has nothing to do with Victoria Traudt legally or otherwise. And that is a miss statement of the law. And I'm asking you to correct that misstatement of
the law.

THE COURT: And for the record, what's the respect of Attorney Gray misstate the law?

MR. SISTI: That Mr. Traudt being acquitted or convicted has nothing to do with whatever the outcome of Victoria Traudt's case would be.

The court sustained Sisti's objection.

c. Questioned petitioner on lawsuits and his commercial fishing work fully 10-15 years prior in Rhode Island that had no bearing whatsoever on petitioner's criminal case (**Exhibit E** – Trial Transcript of State v. Scott Traudt, 07-

S-222, 223 & 246). The attempt, as she admitted in side bar after trial counsel for petitioner objected to that line of questioning, was to insist that petitioner's motive for getting assaulted by the police and vigorously defending himself was to bring litigation against the town of Lebanon. There was no relevancy to the case, and the questioning, though objected to by trial counsel, continued to demonstrate bias and malice on her part, and was damaging to the petitioner. There was no pre-trial hearing filed by the prosecutor to get this "evidence" in front of the trial court on a Rule 404 motion for admissibility. She laid no foundation at trial for its introduction. The damage was done to petitioner's standing in front of the jury. The questioning:

GRAY:  You didn't say that you were going to sue them?
PETITIONER: What I said in the lock-up was they should be familiar
Civil Rights Act.
GRAY: But you've brought lawsuits before, haven't you?
PETITIONER: Yes, I have.
GRAY: You were a fisherman in Rhode Island, weren't you?
PETITIONER: Correct.
GRAY: You sued former employers there, didn't you?
PETITIONER: Yes, ma'am.
MR. SISTI: Your Honor, could -- on relevancy, Judge,
could we just approach briefly?
THE COURT: Yes, you can --
MR. SISTI: -- approach briefly?
THE COURT: -- approach.
(At sidebar.)

The court again sustained petitioner's trial counsel's objections, stating there'd been no evidentiary hearing, and it was an irrelevant line of questioning.

d. Questioned petitioner over his work in Iraq for a private security firm and attempted to draw parallels with his work in Iraq to that of a notorious company that had recently committed a massacre in Baghdad. The attempt by Gray during this cross examination of petitioner was to cast him again as violent, and dangerous, through a line of questioning that not only attempted to link him to a company he did not work for, but also to assault his patriotism:

GRAY:  It's similar in nature to Blackwater, right?
PETITIONER: Not really.
GRAY: It's smaller than Blackwater?
PETITIONER: Yeah.  It's smaller and there's a lot more respect for
human rights and operations.
GRAY: Pardon?
PETITIONER:  It's smaller and there's also a lot more respect for
human rights and our operations -- their operations.
GRAY: And Cohort is a strictly for profit organization, isn't
it?
PETITIONER: Correct.

Later in the same line of same questioning:

GRAY: It's operated for profit not for patriotism, right?

The intent here clearly was to cast petitioner as a violent mercenary with no patriotism. The questioning was not objected to by trial counsel.

e. The prosecutor in her closing remarks continued to mischaracterize petitioner's and other's trial testimony. In this instance, she attributed statements to petitioner that were never made.

GRAY: He said he was a Navy Seal and would be back with 35 of his Navy buddies to shut the place down, said he'd come in before, she didn't have him confused with anyone. He admitted he told her that.

13

This is not in the record, anyway. This was her earlier questioning of petitioner:

GRAY: You told her you were a Navy Seal, didn't you?
PETITIONER: No, I didn't.
GRAY:You were never a Navy Seal, were you?
PETITIONER: No, ma'am.

f. Continued to, in her closing remarks, to talk about facts not in evidence, that were not the subject of an evidentiary proceeding subject to Rule 404, and cast her as a "unchallenged state's witness":

GRAY: Is Scott Traudt a want-to-be military -- officer? He's in the paramilitary. He was working for a paramilitary concern. It was a private security firm. It went to Iraq, went to Afghanistan, similar to Blackwater. *But he didn't have the same discipline and training that he would have had in the military. He didn't have those constraints. He was freer to do what he wanted to do and wasn't being held as accountable.*

This argument by Gray necessarily drew the jury to the Baghdad massacre by Blackwater, asking them to draw the conclusion that petitioner was somehow "wasn't being accountable" for his actions in Baghdad. The implication here was that petitioner had done bad acts and was simply not caught, for work he had performed overseas on US government contracts. *On September 16, 2007, Blackwater military contractors shot at Iraqi civilians killing 17 and injuring 20 in Nisour Square, Baghdad. The fatalities occurred while a Blackwater Personal Security Detail was clearing the way for a convoy of US State Department vehicles transporting diplomats to a meeting in western Baghdad with officials of the United States Agency for International Development. The killings outraged Iraqis and strained relations between Iraq and Washington.* Virtually daily news stories regarding this shooting continued on through petitioner's trial and it was clear from the reference that Gray was attempting to somehow implicate petitioner in war crimes activities because he worked in a company "similar to Blackwater."

There was no defense counsel objection to this on behalf of the petitioner.

g. The prosecutor, at sentencing, knowingly submitted a Pre-Sentence Investigation where Officer Smolenski was allowed to give a victim's statement even though petitioner was acquitted of the assault charge against him. (**Exhibit F** – Sentencing Hearing of Scott Traudt, January 27, 2009)

h. The prosecutor at trial, in her closing arguments (see **Exhibit C**), cast petitioner as a want-to-be officer, with no training, basically a hired thug. At sentencing, she reversed course, stating that he was highly trained, had contacts worldwide, could easily escape and vanish, was extremely dangerous because of his training (no evidence of which was adduced at trial or sentencing by the State). This has the effect of the prosecutor tailoring her message into a) one for the jury and trial court to cast petitioner in one light and b) one at sentencing to accomplish her goal of the maximum sentence possible. This profound inconsistency violated petitioner's due process rights under the 5th and 14th Amendments and fair trial right under the 6th Amendment.

*Petitioner was prejudiced and suffered clear harm in front of the jury and to his US Constitutional rights.*

(b)     If you did not exhaust your state remedies on Ground Three, explain why:

I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it. I had also instructed appellate counsel to file a brief on this issue and raise this issue at the New Hampshire Supreme Court, and he said that he would, but never did.

(c)     **Direct Appeal of Ground Three:**

(1)     If you appealed from the judgment of conviction, did you raise this issue?

YES. I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it.

14

(2)      If you did not raise this issue in your direct appeal, explain why:

**(d) Post-Conviction Proceedings:**

(1)      Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

      NO.

(2)      If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)      Did you receive a hearing on your motion or petition?

(4)      Did you appeal from the denial of your motion or petition?

(5)      If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)      If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)      If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND FOUR: The evidence had neither the weight nor sufficiency for a reasonable jury to find petitioner guilty beyond a reasonable doubt in violation of petitioner's 5th, 6th, and 14th Amendment rights under the US Constitution.**

(a)      Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

    1.   For petitioner's conviction of the disorderly conduct violation (RSA 644:2, II(d), the evidence was that police officers attempted to force and confine petitioner into a vehicle while observing his wife's field sobriety test. All evidence of "interference" with the police officers came to spoken words alone uttered between petitioner and the arresting officers. In fact, evidence that petitioner expressed concern for his wife and told them she did not have to take the test because of her constitutional rights existed (petitioner was exercising his 1st Amendment rights under the US Constitution). Uncontroverted trial testimony in evidence showed that but for the police officers charging and seizing petitioner first, the petitioner assaulted no officer, did not advance to the police officers, stayed within the confines of the vehicle's open

door and the body of the car. In a motion on the suppression, the trial court committed plain error in misconstruing a police report admitted into evidence and agreed upon by all parties for the purpose of that motion. In plain error, the court concluded that petitioner had a) assaulted the police officers first, which was not a fact in the record, a huge error in that the police admitted in the police report admitted as evidence that they made first contact with petitioner b) advanced on the police officers after exiting the vehicle which was again plain error, as petitioner had not advanced on police officers according to the police report and c) his speech and refusal to be confined in the vehicle after an illegal traffic stop (he was already detained by the traffic stop) constituted disorderly conduct despite not being anywhere near the field sobriety test of his wife, not making any threats, nor engaging in illegal or dangerous conduct in the gap between the door of the vehicle and the vehicle's body.

2.  There was no physical evidence of assault on Officer Roberts by petitioner. There were no medical reports filed with the court or entered into evidence. There was one sole strike allegedly by petitioner on Officer Roberts, and that was backed up by one witness (Officer Smolenski) who on October 21, 2008, at petitioner's trial, testified that he saw petitioner strike Roberts behind the ear, with a closed fist. In a prior trial of Victoria Traudt in Lebanon District Court in November 13, 2007, before Judge Cirone, Smolenski testified that Roberts was struck in the face. **(Exhibit G)**(Trial Transcript of State v. Victoria Traudt 07-CR-312).

3.  Despite testifying that he was hit so hard that he was "knocked down." Roberts had no visible bruise, mark, or abrasion on his head. Video of the sides of his head reveals that approximately 20 minutes after the alleged attack on himself and Smolenski, he has no bruise, cut, or abrasion on the side of his head. More disturbingly, he testified to concussion like symptoms at petitioner's sentencing hearing. He denied, under oath in interrogatory answers in **Traudt v. Roberts** that he ever had a concussion. In fact, when Prosecutor Nancy Gray sought a 2-5 year prison term for petitioner, Prosecutor Gray told the trial court that Roberts had been "knocked unconscious." **(Exhibit F)** She later told a reporter that Roberts had a concussion, then admitted he'd never been treated for any injuries at all. **(Exhibit H)** (Jim Kenyon, *The Valley News,* July 30, 2009 "Sound Evidence")

4.  Victoria Traudt testified with testimony crippled by Gray's closing remarks bias, but despite that testified she never saw petitioner strike Roberts.

5.  Petitioner testified that he never struck Roberts.

6.  In the trial of petitioner, Officer Roberts testified first that he was struck above the ear, then behind the ear (pages 59 and 107, respectively, of petitioner's trial transcript **(Exhibit E))**:

    *"...the defendant broke his right arm free from Corporal Smolenski's grip and threw a punch over the top of his body that connected with the right top of the head above my ear..."* – page 58-59

    This was followed later in the same trial by:

    *"...As I testified, I got hit behind the ear in the skull. It left no visible injury."* – page 107

    This clearly went to the sufficiency of the evidence as one punch, one strike, has now been either into the face or...nope, above the ear...or...no, it was behind the ear. No reasonable jury could have concluded that the testimony of these officers was credible, and beyond a reasonable doubt, just on this line of testimony alone due to its vagaries and imprecision as to what exactly went on at the roadside stop.

7.  Officer Daniel Gaspard testified in the November 13, 2007 trial of Victoria Traudt, and buttressed his police report by under oath testifying that the time between Officer Roberts' first call for backup and then his second call for assistance was 5 seconds. **(Exhibit G)** (Transcript of Victoria Traudt's Lebanon District Court trial, November 13, 2007, page 36) Gaspard arrived 15 seconds later. (Victoria Traudt trial transcript, pages 68-69). Smolenski, at his deposition, stated that at the time of the first call for backup by Roberts no violent encounter was underway. That leaves a maximum of 20 seconds for both Roberts and Smolenski to approach petitioner on the side of the car, exchange warnings and orders, and listen to

petitioners speech of concerns for his wife's safety and rights. Taken all together, it was physically impossible for petitioner to perform the actions he was accused of; moreover, petitioner was walking on a broken ankle (sustained while working overseas on December 26, 2006). In short, there was time only for the officers to assault the petitioner and inflict the injuries reported in the medical files submitted here under seal. Gaspard's police report confirms the 5 seconds between calls.

8. Petitioner was prejudiced and suffered clear harm in front of the jury and to his US Constitutional rights

(b)    If you did not exhaust your state remedies on Ground Four, explain why:

I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it.

(c)    **Direct Appeal of Ground Four:**

(1)    If you appealed from the judgment of conviction, did you raise this issue?

YES. I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it. I had also instructed appellate counsel to file a brief on this issue and raise this issue at the New Hampshire Supreme Court, and he said that he would, but never did.

(2)    If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1)    Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

No.

(2)    If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)    Did you receive a hearing on your motion or petition?

(4)    Did you appeal from the denial of your motion or petition?

(5)    If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)    If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

17

Result (attach copy of the court's opinion or order, if available):

(7)     If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

 (e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND FIVE: The New Hampshire disorderly conduct statute of which petitioner was convicted is unconstitutionally vague and petitioner was denied his 5th and 14th Amendment rights under the US Constitution to due process and denied his 1st Amendment right to free speech.**

(a)     Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

1.   New Hampshire law provides for obstruction of justice, assault, simple assault, and myriad other criminal laws dealing with bodily contact or interference with a police officer. The disorderly conduct statute that petitioner was convicted of violating can only be interpreted as being highly subjective and useful for police officers to use as a "cover" charge. Police officers have a duty greater than normal citizens to take abusive speech so long as it is not a threat. At no time did petitioner threaten the defendants nor did he use foul language, but was only inquiring into his wife's status. As such, the statute is overly broad, and petitioner could have no idea that what he was engaging in as protected 1st Amendment speech was illegal, nor could it be.

2.   Appellant was standing next to a vehicle between its opened door and the body of the car after a stop without probable cause (a "pretextural stop"). Appellant was seized at the traffic stop, but then was ordered to be confined in a vehicle. Petitioner was neither armed nor hostile, nor did he make threats.

3.   Officer Roberts testified under oath (**Exhibit E**) that petitioner never physically interfered with the field sobriety test. This should have been immediate grounds for a directed verdict from the court regarding the disorderly conduct charge as petitioner was convicted of "intereference with a criminal investigation":

SISTI: Okay. So in order for him to interfere -- I mean, physically, he'd have to be real close to you in order to interfere with that test physically?
ROBERTS: Physically. Yes.
SISTI: Yeah. I mean, because what you do – and tell me this is basically what you do is you take a pen, basically, and you move it one way and then you move it the next way, right?
ROBERTS: Yes.
SISTI: Okay. And its relatively close to the person, like what is it, ten to fifteen inches, sometimes like that?
ROBERTS: Correct.
SISTI: All right. For somebody to physically interfere with it, they would have to be in touching distance of you?
ROBERTS: To be physical. Yes.
SISTI: Okay. And none of that happened, right?
ROBERTS: No.

And then this exchange confirming that there's no standard, no uniform enforcement of the disorderly conduct statute:

SISTI: Are you saying that you've never done a field sobriety test, all right, with another police officer on the scene and a passenger outside the car?
ROBERTS: I wouldn't say outside the car because that's whether they're getting arrested for something like that. But I've never allowed a person to exit their vehicle and stand within ten feet and just stare at me while my attention is trained on the suspected impaired driver. No.

Petitioner was prejudiced and suffered clear harm in front of the jury and to his US Constitutional rights.

(b)     If you did not exhaust your state remedies on Ground Five, explain why:

18

I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it.

(c)    **Direct Appeal of Ground Five:**

(1)    If you appealed from the judgment of conviction, did you raise this issue?

YES. I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it. I had also instructed appellate counsel to file a brief on this issue and raise this issue at the New Hampshire Supreme Court, and he said that he would, but never did.

(2)    If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1)    Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

NO.

(2)    If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)    Did you receive a hearing on your motion or petition?

(4)    Did you appeal from the denial of your motion or petition?

(5)    If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)    If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)    If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

 (e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

19

**GROUND SIX: Failure to provide petitioner with a properly constituted jury in violation of his 6th Amendment rights under the US Constitution.**

(a)      Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The July, 2008 second aborted trial of petitioner was cancelled by the trial judge because of a jury problem. After the jury had been selected and all prosecution and defense preemptory challenges had been exhausted prior to the July, 2008 tentative trial date (the jury had been selected in May, 2008), one juror had to drop out for health reasons. Petitioner believes that the jury had not been sworn at this point. Counsel for the petitioner objected on grounds this was not a fairly constituted jury under **Shulinsky v. Railroad (83 N.H. 86) (1927).** The trial court agreed, and the trial was cancelled.

Petitioner believes another jury was selected in August-September of 2008 (records and transcripts of these are being ordered by petitioner) and the same situation occurred wherein a juror already selected after all preemptory challenges were exhausted by all sides had to drop out of the trial for health reasons. Again, counsel for petitioner raised the **Shulinsky** issue. This time, Judge Bornstein reversed himself, and the jury that petitioner went to trial with was unfairly constituted under the 6th Amendment right to a fair trial before an impartial jury.

Jury selection would prove critical as the jury was deadlocked for hours on the one charge petitioner had been acquitted of, with another similar charge being dispatched by the jury quite quickly (the alleged assault on Officer Smolenski).

Petitioner is attempting to transcribe the hearings held in July 2008 and before his October 20-22, 2008 trial to show the argument and objection.

Petitioner was prejudiced and suffered clear harm in front of the jury and to his US Constitutional rights.

(b)      If you did not exhaust your state remedies on Ground Six, explain why:

I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it. I had also instructed appellate counsel to file a brief on this issue and raise this issue at the New Hampshire Supreme Court, and he said that he would, but never did.

(c)      **Direct Appeal of Ground Six:**

(1)      If you appealed from the judgment of conviction, did you raise this issue?

YES. I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it. I had also instructed appellate counsel to file a brief on this issue and raise this issue at the New Hampshire Supreme Court, and he said that he would, but never did.

(2)      If you did not raise this issue in your direct appeal, explain why:

    (d) Post-Conviction Proceedings:

(1)      Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

(2)      If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)      Did you receive a hearing on your motion or petition?

(4)      Did you appeal from the denial of your motion or petition?

(5)      If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)      If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)      If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

 (e)  Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

## GROUND SEVEN: Ineffective assistance of trial counsel in violation of petitioner's rights under the 6th Amendment to the US Constitution's right to a fair trial

(a)      Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

      1.   Sisti lost a critical piece of evidence prior to trial and never informed Petitioner – the critical processing room DVD. He never reviewed it anyway. The DVD was critical because therein, Officer Roberts states that the contact by petitioner against him was "indirect contact" that he was charging as an assault. This fully comports with petitioner's trial testimony that if there had been contact between himself and Officer Roberts brought about by petitioner's actions, it was merely incidental as petitioner was protecting himself and his head and body from repeated blows from riot batons, kicks, punches, and pepper sprays admitted to by the police officers. It was fertile grounds for cross examination, as his two versions of events were wildly inconsistent with each other as he later testified that petitioner struck him hard enough to knock him down.

      2.   Sisti did not seek nor recover Smolenski's or Roberts' prior trial testimony in **State v. Victoria Traudt**, wherein Smolenski's trial testimony regarding the strike on Roberts allegedly committed by petitioner differed markedly from Roberts version and his own later testimony in the Grafton County Superior Court trials of petitioner an petitioner's wife. (See **GROUND FOUR** above for the transcript of what was not recovered prior to petitioner's trial). This was critical to casting doubt, and was ripe for exploration in front of a jury, as Roberts himself testified first the strike was above the ear, then behind the ear. Smolenski said Roberts was struck in the face by petitioner, then at Petitioners trial this was changed to the head, in the same spot Roberts described.

      3.   No experts were called even though one – Frank Santin, a former capital crimes investigator and retired Dover, NH police lieutenant – had on the witness stand demolished the roadside traffic stop performed by Officer Roberts and called into question his capacity for truthfulness in Lebanon

21

District Court and had provided Sisti with 12 pages of problems identified in the police reports of Smolenski and Roberts. Santin and fellow investigator Sue Smith had taken statements from prosecution witnesses, one of who, Cheryl Curtis, had misidentified petitioner as being 5 foot 8, and 240 pounds. Petitioner on January 14, 2007 was 6 foot 4 inches, 205 pounds.

4. Sisti raised a self-defense claim for petitioner even though petitioner told him –and put in writing – that he did not strike Roberts or anyone. (**Exhibit I** – Affidavit of Scott Traudt) This "opened the door" for "character" evidence to come in, and Sisti never rebutted witnesses Richard LaRocque or Cheryl Curtis, who testified to petitioner's alleged threats at he bar. In interviews with Santin and investigator Sue Smith, Curtis had misidentified petitioner, stated the wrong time for petitioner's arrival at the bar and grille, stated that petitioner was in a party of 20 people (there were three in petitioner's party) etc. She also described petitioner as 5' 8 inches and 240 pounds with a crew cut the night of the incident. petitioner was 6 foot 4 inches and 205 that night. All of these beneficial cross examination materials were ignored. More tellingly, he basically subverted petitioner's credibility in front of the jury in his closing argument, again arguing for the flawed self-defense issue that petitioner never agreed to at trial:

SISTI: You know, if Roberts says that Traudt hit him in the head, I guess, Roberts' testimony was that he actually drew back and punched him with a closed fist in the head and dropped him right there in the road, and, again, we know that that's just got to be garbage, but if there is some reason that Scott's body somehow got in touch with Roberts' body that caused some contact to his head, thrashing around or whatever, okay, that's covered by the self-defense instruction. Scott didn't provoke anything. He was not the initial aggressor. Zero. He was the guy that got beat up. He wasn't the guy that started it. So if you've got to go to that level, you can go to that level. The judge told you can use self-defense as a defense here, and it does apply in this case. Just in case -- just in case, I'll give them the benefit of the doubt here, you know, Roberts, but I hate doing it, but if Scott hit him somehow when he was protecting himself from being beaten, that covers it, okay? (S. Traudt Trial Transcript, Page 23)

5. Compounding the issues above, Sisti at trial in his opening statement (**Exhibit J** –Opening Arguments in **State v. Scott Traudt**) and in direct examination of petitioner repeatedly promised the jury they'd see the voluminous medical records for review to show what really happened. He never did. Jurors questioned months after the trial stated that one issue – promising, then not delivering – effected petitioner's credibility tremendously, and in fact cast petitioner negatively when explaining his medical injuries without records or the doctors.

6. Sisti noticed the court that Drs. Jenkyns and Nutting would testify. He never called them. Sisti, in asserting the defective self-defense claim, could have possibly salvaged this incredibly poor strategic decision if he had put both doctors on the stand and under oath. He did not. Both doctors would testify not only to the extent of petitioner's injuries, but also that the wounding mechanisms were consistent with petitioner's version of events. Sisti never intended to call them – he stated that at the bench in a discussion in the closing arguments. *Had petitioner known this before trial, he would have relieved Sisti and sought new counsel.*

7. Sisti did not move for a mistrial at any point, even after Nancy Gray, the prosecutor, repeatedly asserted that petitioner had not "proven his innocence," improperly raised admiralty claims the petitioner had for injuries in Rhode Island aboard fishing vessels, attacked his patriotism, called him a want-to-be military officer, deliberately misstated facts and testimony in the case, referenced facts not in evidence (see **GROUND THREE's** list of abuses petitioner suffered and incorporated here by reference).

8. Sisti did not move for a mistrial after Gray confused the jurors about a fictional "bloody shirt" supposedly introduced by the Petitioner at trial – it never was. This amounted to prosecutorial overreach and referencing facts not in evidence as well as shifting of the burden and should have been motioned for mistrial. Sisti did not.

9.  Petitioner sat at trial with a damaged frontal lobe, a concussion, post concussion syndrome suffered by the assault on him by the police officers Roberts and Smolenski. Sisti never explored petitioner's capacity for testimony nor ability to comprehend some of the decisions being made pre and during trial. Sisti never sought a delay to explore his client's competency to stand trial given those injuries, all of which are detailed in full with the medical history now before the court under seal (**Exhibit D**).

10. Sisti never retained an expert witness to review the processing video of petitioner. He had a legal duty to do so as the credibility of the officers was paramount; there was no physical nor circumstantial evidence of the assault on either officer by petitioner. So their capacity for truthfulness was paramount, and all of their spoken words recorded that night needed to be recovered. Sisti never consulted an audio expert. Post-conviction, petitioner retained an expert who identified clear collusion between the officers; some of the evidence was discovered in March of 2009 by Arlo West and was reported accurately as Officer Roberts stating in the processing video to Officer Smolenski, who was apparently unaware of any assault on Roberts: *"My intention is that we all say he did this..."* (**Exhibit K** – Transcript of Processing Video, page 4)

11. It is telling that Victoria Traudt was acquitted by her defense counsel, George Ostler, using the same processing video to devastating effect in cross examining Roberts over his embellishment of Victoria's alleged assault on Smolenski. What Roberts described on the video as a *"mauling"* was reduced, through cross-examination, to a simple touch of a finger. This embellishment by Roberts could have been used by Sisti, but he didn't, and he compounded it by not using the plain audio where Roberts does not describe a mood-altering blow to the head by petitioner, but rather some indirect contact a jury could have said was merely petitioner protecting himself from excessive force.

12. Sisti did unbelievable damage to petitioner's case in closing by challenging jurors to review medical evidence that was never introduced. The effect can only be described as catastrophic to petitioner's case:

SISTI: *They got questions about those pants, they better go answer them. Those are his pants; that's his blood, and that's what they did to him, okay? Medicals. All right, any question about his medicals? A couple of jurors couldn't sit on this case because they were too close to the two doctors, ladies and gentlemen. The two doctors that are Scott Traudt's doctors; one's an orthopedic guy, and one's a neurologist. The two doctors that were announced as potential witnesses; they got a problem with Scott having those injuries, go ask the doctors.* (S. Traudt Trial Transcript, 18-19 Closing Argument)

13. Sisti did not attempt to use witnesses from a prior Vermont proceeding in US District Court (**Thurber v. Town of Springfield**) who would have testified to the excessive force and abusive character of one police officer (Officer Roberts). Evidence would have been admissible under **State v. Laurie** or at least been made available for *in camera* review.

14. There was one 45 minute meeting with petitioner fully one year before the trial to prepare petitioner for trial. This was inconceivably effective.

15. Sisti did not know that that the charges carried felony consequences for petitioner, and were in fact, when viewed with the sentence enhancements upon conviction for assaulting a police officer, felonies under New Hampshire law. Sisti told petitioner: "If these were felonies, we'd be talking a whole different ball game," or words to those effect.

16. On his own efforts, prior to trial petitioner discovered that Officer Roberts had been sued for excessive force and misconduct in Vermont in a federal civil rights action. This would have been a useful tool on cross-examination, as statements of witnesses under oath were obtained by petitioner and given to Sisti. He failed to use them, and offered no explanation. These were not disclosed to petitioner prior to trial by the state. More importantly, for counsel to remain silent during closing when Gray virtually testified that there was no complaint, no problems whatsoever with Roberts or Smolenski's performance as police officers – *"not one complaint"* – when a town is paying damages for his actions was completely ineffective.

17. Sisti told the trial court in closing arguments at a bench conference he NEVER intended to introduce medical evidence. This was not disclosed to petitioner, and his notice to the court that he would call two medical doctors assure petitioner fully a year earlier that they and medical evidence would be able to tell the jury how badly I was assaulted by the two police officers. This totally violated petitioner's right to effective counsel as a key piece of the petitioner's case to put on was falsely represented to the petitioner.

Petitioner was prejudiced and suffered clear harm in front of the jury and to his US Constitutional rights.

(b)     If you did not exhaust your state remedies on Ground Seven, explain why:

I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it. I had also instructed appellate counsel to file a brief on this issue and raise this issue at the New Hampshire Supreme Court, and he said that he would, but never did.

(c)     **Direct Appeal of Ground Seven:**

(1)     If you appealed from the judgment of conviction, did you raise this issue?

YES. I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it. I had also instructed appellate counsel to file a brief on this issue and raise this issue at the New Hampshire Supreme Court, and he said that he would, but never did.

(2)     If you did not raise this issue in your direct appeal, explain why:

**(d) Post-Conviction Proceedings:**

(1)     Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

(2)     If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)     Did you receive a hearing on your motion or petition?

(4)     Did you appeal from the denial of your motion or petition?

(5)     If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)     If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

24

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)     If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

  (e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND EIGHT: The New Hampshire Supreme Court abused its discretion in not accepting the issues for review on Direct Appeal presented by Petitioner after appellate counsel failed to file a substantial brief against Petitioner's instructions in violation of petitioner's due process rights under the 5th and 14th Amendments to the US Constitution and his right to a fair trail under the 6th Amendment to the US Constitution.**

(a)     Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Appellate counsel Steven Jeffco agreed to file the appealable issues documented in several pre-and post-trial motions filed by either Mark Sisti or petitioner when he was represented pro se. Jeffco filed a notice of appeal, and then noticed the court of only three issues. This was withheld from petitioner while he was incarcerated; petitioner had told Jeffco he wanted to see his draft and all issues going in prior to filing. This instruction was not complied with.

Jeffco filed a defective appeal to the New Hampshire Supreme Court wherein he admitted to not being thorough in his preparation, and not transcribing closing arguments critical to several of petitioners claims of ineffective assistance of counsel (which Jeffco never filed) and prosecutorial misconduct and overreach (he also inexplicably excluded them). When petitioner discovered this error, he filed a Motion to File "Pro Se" Supplemental Brief to the New Hampshire Supreme Court in case number 2009-0150 **(Exhibit L).** No argument was scheduled and it was fully timely as petitioner had only discovered appellant counsel's mistakes and ineffectiveness and had taken action to get his direct appeal heard in full.

The New Hampshire Supreme Court denied the petitioner's motion without a hearing or written order **(Exhibit M).** This effectively precluded several strong issues from being presented to the court on direct appeal, and amounted to a 5th, 6th, and 14th Amendment violation of petitioner's due process rights and right to a fair trial and fair appellate review.

Petitioner was prejudiced and suffered clear harm in front of the jury and to his US Constitutional rights.

(b)     If you did not exhaust your state remedies on Ground Eight, explain why:

Yes. My filing a Motion to File "Pro Se' Supplemental Brief with the court – the highest appellate court in the State of New Hampshire state legal system, effectively exhausted my remedies when they refused to accept the Supplemental Brief.

(c)     **Direct Appeal of Ground Eight:**

(1)     If you appealed from the judgment of conviction, did you raise this issue?

Yes.

(2)     If you did not raise this issue in your direct appeal, explain why:

I am unclear as to how raising the issue at the New Hampshire Supreme Court can be presented here – my Motion to File "Pro Se" Supplemental Brief was denied and contained meritorious claims appellate counsel refused to raise even after instructed to do so.

25

(d)     **Post-Conviction Proceedings:**

(1)     Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

No.

(2)     If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)     Did you receive a hearing on your motion or petition?

(4)     Did you appeal from the denial of your motion or petition?

(5)     If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)     If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)     If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND NINE: The trial court erred when it denied the Defendant's Motion to Suppress Evidence obtained as a result of an illegal seizure of his person under the 4th Amendment to the US Constitution and collateral estoppel should have applied.**

(a)     Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The trial court accepted the ruling from the Lebanon District Court finding that the initial seizure of the petitioner and his wife violated petitioner's wife's rights under the US Constitution, (and by extension, petitioner's under **Brendlin**.) **(Exhibit O** – Lebanon District Court Ruling of June 20, 2007, Docket Number: 45220007cr312)After accepting the illegality of the stop, the trial court went on to find that the actions of the petitioner to evade arrest and assaulting officers, the petitioner's independent actions purged the taint of the initial illegal stop. The court specifically found that the petitioner exited his vehicle and approached the officer first. Further, the trial court found instead of complying with the officer's requests that he return to the vehicle, the petitioner struck Officer Roberts. The court found because the police did not initiate the interaction with petitioner, the evidence of the assaults was not obtained through the exploitation of a prior illegality committed by the police. All three of these

26

findings were contrary to the facts agreed to in lieu of testimony. (**Exhibit P** – Officer Roberts Police Narrative of January 14, 2007 with Order and Ruling from Judge Houran, Feb. 21, 2008).

The key facts in the trial transcripts and in the police reports are that: the police officers made contact physically with petitioner after illegally attempting to confine him in a vehicle while he was watching an illegal traffic stop and field sobriety test being performed by the police officers. Petitioner, according to the police report used, never advanced on the police officers, and did not strike the officers first.

The further act of attempting to force petitioner into a vehicle was another illegal seizure.

Petitioner was prejudiced and suffered clear harm in front of the jury and to his US Constitutional rights.

(b)      If you did not exhaust your state remedies on Ground Nine, explain why:

(c)      **Direct Appeal of Ground Nine:**

(1)      If you appealed from the judgment of conviction, did you raise this issue?

Yes. It was raised in "Brief for the Defendant" in State v. Traudt, 2009-0150, filed with the New Hampshire Supreme Court on September 1, 2009.

(2)      If you did not raise this issue in your direct appeal, explain why:


(d)      **Post-Conviction Proceedings:**

(1)      Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

No.

(2)      If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)      Did you receive a hearing on your motion or petition?

(4)      Did you appeal from the denial of your motion or petition?

(5)      If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)      If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number:

27

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TEN: It was plain error for the trial court to admit evidence of uncharged misconduct without benefit of a hearing, finding of fact or rulings of law, where the evidence was only relevant to propensity of the petitioner to commit crimes charged, and in violation of petitioner's due process rights under the 14th Amendment to the US Constitution.**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The trial court for petitioner admitted uncharged conduct and "character" evidence from witnesses at the establishment where petitioner and petitioner's wife had attended the evening of his arrest. In particular, Cheryl Curtis and Richard LaRoque were allowed to testify without any pre-trial examination as to whether their testimony was admittable; such a hearing would have discovered that such uncharged conduct wasn't only prejudicial, but would be subject to cross –examination based on contradictory statements regarding petitioners "state of mind" that LaRocque and Curtis had given to investigators. Larocque had a possible **State v. Richards (129 N.H. 669 (1987))** issue in that he cooperated with police and they conveniently overlooked liquor law violations for barring petitioner from further consumption of alcohol and then allowed him back into bar. Under state law, petitioner – despite not being intoxicated – once being suspended from service, should have been asked to leave the premises. Larocque's testimony conceivably was in exchange for immunity from prosecution for himself from liquor law violations. This was never disclosed, and had there been an evidentiary hearing to protect petitioner's rights, this would have come out. This issue was appealed to the New Hampshire Supreme Court on Direct Appeal. **(Exhibit A)**

(b) If you did not exhaust your state remedies on Ground Ten, explain why:

(c) **Direct Appeal of Ground Ten:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes. Appellate counsel briefed this issue in his September 1, 2009 filing to the New Hampshire Supreme Court. Appellate counsel did not brief the **State v. Richards** issue of this filing.

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

NO.

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

28

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)    Did you receive a hearing on your motion or petition?

(4)    Did you appeal from the denial of your motion or petition?

(5)    If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)    If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)    If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

 (e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:


**GROUND ELEVEN: Petitioner was denied his right to a fair trial when the State withheld exculpatory materials in the form of radio message traffic recordings showing or tending to support petitioner's version of events and also failure to provide Brady v. Maryland 373 U.S. 83 (1963) materials regarding police officer's prior misconduct in violation of petitioner's 6th Amendment right to a fair trial and 14th and 5th Amendment rights to due process of law under the US Constitution.**

(a)    Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

1. Prosecutor Gray knew that both Officers Roberts and Smolenski had been accused of misconduct but had told the jury otherwise, that their careers were unblemished. (See **GROUND THREE**, above, and incorporated here by reference). Roberts had been sued in **Thurber v. Town of Springfield** for abuse and excessive force, and a settlement in that case was paid for by the Town of Springfield or its insurers. Smolenski had been the subject of a written disciplinary action in 2006-2007 while employed at the Lebanon Police Department. These were not disclosed to petitioner prior to trial, though petitioner did identify the civil rights case in Vermont and brought it to the attention of trial counsel, who inexplicably refused to call witnesses from that caser to attest to Robert's propensity for misconduct and excessive force.

2. The prosecutor knowingly withheld police radio traffic recorded at headquarters the morning of petitioner's arrest on January 14, 2007. This was not disclosed at trial or prior to trial and was purely exculpatory. In other matters:

> *b.* *De facto* acknowledged by providing them now – 4 *years* after trial – that police radio traffic tending to support plaintiff's version of events was withheld, a clear derogation of their duty to provide exculpatory evidence. (**Exhibit Q** – copy of DVD cover as submitted as part of discovery in **Traudt v. Roberts**)

> *c.* Continue to withhold information that would have been vital to the plaintiff's defense in the form of Mobile Data Terminal transmissions recorded by the LPD the morning of plaintiff and

29

plaintiff's wife's arrest.

    *d.*   Acknowledged expunging disciplinary complaints, findings, or complaints against one or more of the defendants with potential **Laurie** consequences. These actions took place in 2008, ostensibly before the eve of trial. The files were never reviewed *in camera* by a judge in plaintiff's criminal trial. **(Exhibit R)**

3. More importantly, as referencing paragraph 1, above, of this **GROUND** there has already been proof that exculpatory evidence has been withheld in the form of audio message traffic recordings that defendants provided to petitioner in **Traudt v. Roberts** through discovery. This was purely exculpatory because it was a critical timeline issue that demolished defendants' claim of an all-out, knock down melee on the side of the road. *This audio CD (now entered for identification purposes in the deposition of Richard Smolenski on April 4, 2013: 76-SS-AR "Radio Traffic" in Traudt v. Roberts ) was purposely withheld from petitioner and petitioner's wife prior to three trials because the simple timeline it provided reduced the total interaction between Plaintiff and Defendants Smolenski and Roberts to a mere 39 seconds at most, and most likely far shorter than that...*the pattern and practice of conduct of the LPD is to frustrate discovery; tellingly, Smolenski and Roberts both under oath at numerous proceedings have been deliberately vague about conversations with petitioner held at the side of the road the morning of January 14, 2007 – with only 39 seconds from a first call for backup to another officer seeing petitioner handcuffed on the ground, arrested, conversations in that 39 seconds absorb much of the timeframe, leaving only critical seconds for what eventually became pages of police reports that a jury, if it had heard the audio recordings, could never have found Plaintiff guilty because there simply wasn't enough time for the officers' version of events to transpire.

According to trial transcripts, even a conservative timing of the exact words uttered by Roberts and Smolenski absorb fully 20 seconds of the elapsed 39 seconds when the exact phrasing of petitioner's alleged speech that morning is included. Petitioner's wife and co-defendant, as well as petitioner, dispute Roberts and Smolenski's version of the backup calls –as does Officer Daniel Gaspard, who testified under oath that there was only five seconds between Roberts' backup calls and then Gaspard arrived on the scene to see petitioner face down, immobile. Gaspard saw no fight or struggle even from the road, meaning the radio message traffic was purposely withheld because it created unassailable bookends to the petitioner's version of events. The clock started and stopped on the entire incident with Robert's first call for backup and then concluded when Gaspard arrived.

Withholding the radio message traffic and the Mobile Data Terminal traffic of the LPD cruisers that night was clearly a violation of petitioner's rights under the 5th and 14th Amendments and the right to a fair trial under the 6th Amendment. Concluding the point, there was in that critical 19 seconds *if we discount how long the police officers and petitioner interacted verbally* the following events according to the police officers testimony:

    1.  Plaintiff was seized by Smolenski and spun around. Plaintiff pulled away, and was grabbed by Roberts. Plaintiff recoils from Roberts and punches him in the head.

    2.  Plaintiff came back and attacked Smolenski, picking him up and throwing him to the ground in wrestling fashion. Roberts jumped Plaintiff from behind, then punched him in the head and attempted to free Smolenski. Plaintiff is then pepper sprayed repeatedly while on Smolenski.

    3.  Somehow Plaintiff, with two decent sized police officers on top of him, continues to wrestle, dragging the officers back towards the Plaintiff's vehicle. In the police narratives, Plaintiff is struck repeatedly in the head and chest. Plaintiff's pants are shredded and bloodied at the knees.

    4.  Plaintiff continues to battle on, and is tackled by the officers once again at the front of Plaintiff's vehicle. Officer Gaspard arrives.

In the same vein, the audio expert referenced earlier in this petition as Arlo West used technology that did not exist in 2007 and only came into existence in mid-2012. Using enhanced audio forensics, West was able to enhance garage conversations between Smolenski and Roberts recorded on January 14, 2007, and in direct reference to petitioner's criminal charges the night of his arrest. This was purely exculpatory as it goes to the officers' capacity for truthfulness. Using the LPD's own time stamps, from 01-05-30 to 01-10-50, as reference points, West enhanced the audio in March, 2013, and was able to cull the

following conversation in which Officer 1 is Roberts and Officer 2 is Smolenski (**Exhibit S** – Forensic Transcript of March 11, 2013):

> Officer 1: Rich can you step outside for a second?
> Officer 1: We'll be right back.
> Officer 1: Do you have a problem with this?
> Officer 1: You're worried about this for nothing.
> Officer 2: See what I'm saying?
> Officer 2: But I don't want to get in trouble
> [Inaudible]
> Officer 2: All I'm saying is that [Inaudible] saying.
> Officer 1: Then he wouldn't be able to say that
> [Inaudible]
> Officer 1: [Inaudible]
> [Inaudible]
> [Inaudible]
> [Inaudible] say [Inaudible]
> Officer 2: All I know is [Inaudible]
> Officer 1: [Inaudible]
> Officer 2: I was explaining that to him [Inaudible]
> Officer 1: You will have to say that [Inaudible] first
> [Inaudible]

It is telling that Roberts asks Smolenski to step outside into the garage/sally port area, where the only intention can be to conceal their conversations. And Smolenski is clearly not comfortable with what Roberts is asking him to do – obviously something related to charges against Plaintiff. More particularly, on April 4, 2013, in his deposition taken by petitioner in **Traudt v. Roberts**, Smolenski stated he'd never been uncomfortable with anything Roberts had asked or ordered him to do, never had any issues with Roberts' performance or conduct. Clearly he was of a different mind on January 14, 2007.

Petitioner was prejudiced and suffered clear harm in front of the jury and to his US Constitutional rights.

(b)    If you did not exhaust your state remedies on Ground Eleven, explain why:

All the facts mentioned in Ground Eleven were newly discovered between September 2012 and March 8, 2013. Even more importantly, Judge LaPlante is assessing in camera the disciplinary action taken against Officer Smolenski for admissibility in **Traudt v. Roberts**. Petitioner will seek leave of this court through a stay of proceedings to pursue this possible new evidence as the subject of a forth coming Motion for a New Trail based on the audio, the withheld radio traffic, the withheld mobile data terminal traffic, and the disciplinary records that were not provided petitioner prior to trial.

(c)    **Direct Appeal of Ground Eleven:**

(1)    If you appealed from the judgment of conviction, did you raise this issue?

No.

(2)    If you did not raise this issue in your direct appeal, explain why:

All the facts mentioned in Ground Eleven were newly discovered between September 2012 and March 8, 2013. Even more importantly, Judge LaPlante is assessing in camera the disciplinary action taken against Officer Smolenski for admissibility in **Traudt v. Roberts**. Petitioner will seek leave of this court through a stay of proceedings to pursue this possible new evidence as the subject of a forth coming Motion for a New Trail based on

the audio, the withheld radio traffic, the withheld mobile data terminal traffic, and the disciplinary records that were not provided petitioner prior to trial.

**(d) Post-Conviction Proceedings:**

(1)      Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

No.

(2)      If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)      Did you receive a hearing on your motion or petition?

(4)      Did you appeal from the denial of your motion or petition?

(5)      If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)      If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)      If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

  (e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWELVE: Inconsistent verdicts violated petitioner's 5th and 14th Amendment due process of law guarantees under the US Constitution.**

(a)      Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Petitioner claims that the verdicts were the result of compromise, and that the witnesses, events, and conduct as described by all parties spun on the credibility –alone – of the officers and petitioner and petitioner's wife. For a jury to decide that petitioner did not body slam Officer Smolenski beyond a reasonable doubt, with no evidence physically of that assault, no injury, no torn clothing, no report of injury, not even a dirty uniform, and then apply a far more stringent standard based entirely on Officer Roberts and Smolenski's testimony that petitioner struck Roberts in the head (or face, or behind the ear, or above the ear – they testified four different ways about the actual hit in three separate proceedings). Again: no evidence, no medical reports, no films, no bruises, cuts – nothing. The jury's actions were clearly inconsistent.

The issue was the subject of a Motion to Set Aside the Verdict Based on Inconsistent Verdicts filing by Mark Sisti after petitioner was convicted on October 22, 2008.

(b)     If you did not exhaust your state remedies on Ground Thirteen, explain why:

I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it.

(c)     **Direct Appeal of Ground Twelve:**

(1)     If you appealed from the judgment of conviction, did you raise this issue?

YES. I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it. I had also instructed appellate counsel to file a brief on this issue and raise this issue at the New Hampshire Supreme Court, and he said that he would, but never did.

(2)     If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1)     Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

No.

(2)     If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)     Did you receive a hearing on your motion or petition?

(4)     Did you appeal from the denial of your motion or petition?

(5)     If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)     If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)     If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND THIRTEEN: Petitioner's trial counsel was ineffective for raising a self-defense claim when he knew petitioner did not strike any officer, and did so over petitioner's objections, in violation of petitioners 6th Amendment right to a fair trial and 5th and 14th Amendment rights to due process of law.**

(a)     Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial counsel raised the self-defense claim as a defense even though all petitioner would testify to was covering his head and neck from repeatedly being struck by the police officers both while standing and once flat on the ground.

Petitioner testified that he never struck any of the officers, never acted in self-defense with any directed use of force against the officers. His only reactions were involuntarily covering his body and head from being struck.

Petitioner supplied an affidavit to second appellate counsel David Ruoff explaining how the self-defense claim came to be filed against petitioner's wishes.

Ruoff on May 5, 2011, filed a Motion for a New Trail based on ineffective assistance of counsel. The trial court denied the motion on July 15, 2011. The New Hampshire Supreme Court agreed to hear a discretionary appeal on the matter (**Exhibit S** – Brief of Appellant) , and decided to affirm the Grafton County Superior Court's ruling on May 17, 2012 (**Exhibit T** – Order from New Hampshire Supreme Court of May 17, 2012).

In the Ruoff Supreme Court brief, one of the core issues regarding the self-defense issue was that Sisti essentially torpedoed it and the petitioner at the same time by stating:

SISTI: You (jurors) can use self-defense as a defense here, and it does apply in this case…if Scott hit him somehow when he was protecting himself from being beaten, that covers it, ok?

In the 3JX decision is contained the abuse of discretion issue, as the court held that because petitioner had testified that there may have been incidental contact as he was covering his head, Sisti managed to "finesse the contradictions" of petitioner's testimony and Sisti's charge to the jury to disbelieve his own client as "that covers it, ok?"

The issue was the subject of a Motion to Set Aside the Verdict Based on Inconsistent Verdicts filing by Mark Sisti after petitioner was convicted on October 22, 2008.

Petitioner was prejudiced and suffered clear harm in front of the jury and to his US Constitutional rights.

(b)     If you did not exhaust your state remedies on Ground Thirteen, explain why:

I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it.

(c)     **Direct Appeal of Ground Thirteen:**

(1)     If you appealed from the judgment of conviction, did you raise this issue?

Yes. I filed a Motion to File "Pro Se" Supplemental Brief" with the New Hampshire Supreme Court on November 20, 2009, containing this issue for direct appeal when appellate counsel refused to brief it, but I raised the ineffective assistance of counsel claim without specific focus on the raising of the self-defense issue, and did not mention the self-defense contradiction mentioned above.

(2)     If you did not raise this issue in your direct appeal, explain why:

Not versed in the law, I was unaware that this was a potential claim for ineffective assistance of counsel.

(d)     **Post-Conviction Proceedings:**

(1)     Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes. It was raised in a discretionary appeal filed by David Ruoff on November 14, 2011.

(2)     If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Discretionary appeal.

Name and location of the court where the motion or petition was filed:

New Hampshire Supreme Court, One Charles Doe Dr., Concord, NH 03301

Docket or case number (if you know): No. 2011-0591

Date of the court's decision: May 17, 2012.

Result (attach a copy of the court's opinion or order, if available):

(3)     Did you receive a hearing on your motion or petition?

Yes.

(4)     Did you appeal from the denial of your motion or petition?

No.

(5)     If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)     If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)     If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

 (e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND FOURTEEN: Sentence enhancements under New Hampshire law were unconstitutionally applied to petitioner in derogation of petitioner's 5th, 6th, and 14th Amendment rights under the US Constitution as the underlying illegality of the stop, and the further adjudication that the field sobriety tests and detention of Victoria Traudt were without probable cause and illegal in a ruling by the Lebanon District Court, removed the cloak of legality to the arresting officers' actions as they were not "acting in the line of duty."**

(a)     Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Petitioner's wife won a suppression hearing in Lebanon District Court on June 20, 2007, and subsequent to that her alcohol-related offenses of "refusing to take a breathalyzer test" or reasonable facsimile thereof were dismissed for lack of probable cause directly related to the stop of her vehicle on January 14, 2007.

The officers were then, at the roadside stop, acting without probable cause, and any commands or instructions, or actions taken against petitioner, were not legal.

(b)     If you did not exhaust your state remedies on Ground Fourteen, explain why:

This issue has never been argued but was the subject of Defendant's Motion to Modify Sentence of (petitioner is unsure from the record) approximately October, 2009, which was filed while incarcerated. The motion was denied without hearing by the trial court.

(c)     **Direct Appeal of Ground Fourteen:**

(1)     If you appealed from the judgment of conviction, did you raise this issue?

No.

(2)     If you did not raise this issue in your direct appeal, explain why:

I did not believe I had sufficient case law to support the argument then, but I believe there are sufficient materials on this matter now. Also, while incarcerated, prison officials greatly limited my access to the prison law library, often taking steps to insure that inmates were denied access to the law library, and the law librarian was especially hostile to anyone trying to do research and get themselves or other inmates out of the North Country Correctional Facility.

(d)     **Post-Conviction Proceedings:**

(1)     Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

NO.

(2)     If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)     Did you receive a hearing on your motion or petition?

(4)     Did you appeal from the denial of your motion or petition?

(5)     If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

(6)     If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number:

Date of the court's decision:

Result (attach copy of the court's opinion or order, if available):

(7)     If your answer to Question (d)(4) or Question (d) (5) is "No," explain why you did not raise this issue:

 (e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

13. Please answer these additional questions about the petition you are filing:

    (a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?

       NO.

       If your answer is "No," state which grounds have not been presented and give your reasons for not presenting them:

       Ground Eleven was not presented to the highest state court (the New Hampshire Supreme Court) because it is comprised of a violation arising out of facts not known to the petitioner until obtained through discovery in an a 42 USCS 1983 case in US District Court for the District of New Hampshire (1:10-cv-00012-JL **Traudt v. Roberts**). These facts came through production requests and interrogatories to defendnats in that case (two of whom are Officers Smolenski and Roberts as identified in this petition for federal habeas corpus relief). Since the identified US Constitutional violation is an ongoing issue, petitioner seeks leave of this court to address this issue in the Grafton Superior Court with a Motion for a New Trial based on newly discovered evidence, a failure to disclose exculpatory evidence, and a failure to disclose police witness Smolenski had disciplinary actions in his past knowingly and willfully withheld in derogation of **Brady** and **Laurie**.

    (b) Is there any ground in this petition that has not been presented in some state or federal court? If so, ground or grounds have not been presented, and state your reasons for not presenting them:

       Ground Eleven was not presented to the highest state court (the New Hampshire Supreme Court) or federal court because it is comprised of a violation arising out of facts not known to the petitioner until obtained through discovery in an a 42 USCS 1983 case in US District Court for the District of New Hampshire (1:10-cv-00012-JL **Traudt v. Roberts**). These facts came through production requests and interrogatories to defendants in that case (two of whom are Officers Smolenski and Roberts as identified in this petition for federal habeas corpus relief). Since the identified US Constitutional violation is an ongoing issue, petitioner seeks leave of this court to address this issue in the Grafton Superior Court with a Motion for a New Trial based on newly discovered evidence, a failure to disclose exculpatory evidence, and a failure to disclose police witness Smolenski had disciplinary actions in his past knowingly and willfully withheld in derogation of **Brady** and **Laurie**.

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?

NO.

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?

NO.

If "Yes," state the name and location of the court, the docket number or case number, the type of proceeding, and the (issue) raised.

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

   (a) At preliminary hearing:

Brian Marsicovetere
128 gates St.
POB 799
White River Junction, VT 05001

   (b)  At arraignment and plea:

Brian Marsicovetere
128 gates St.
POB 799
White River Junction, VT 05001

   (c)  At trial:

Mark Sisti
387 Dover Rd.
Chichester, NH 03258

   (d)  At sentencing:

Steven Jeffco
The Nathaniel Walker House
171 Middle St.
Portsmouth, NH 03801

   (e)  On appeal:

David Ruoff
1850 Elm St.
Manchester, NH 03104

   (f)  In any post-conviction proceeding:

None.

   (g)  On appeal from any ruling against you in a post-conviction proceeding:

None.

18.     Do you have any future sentence to serve after you complete the sentence for the judgment you are challenging?

No.

(a) If so, give the name and location of court that imposed the other sentence you will serve in the future:
(b) Give the date the other sentence was imposed:
(c) Give the length of the other sentence:
(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future:

NO.

19.    TIMELINESS OF PETITION: If your judgment of conviction became final over a year ago, you must explain the one-year statute of limitations as contained in 28 USC 2244(d) does not bar your petition:

My conviction became final after May 17, 2012, so I am well within the statute of limitations.

Therefore, petitioner asks that the Court grant the following relief:

A. For any of the grounds cited in this petition, or any grounds the Court finds apply, to overturn my convictions for simple assault and disorderly conduct and send the case back to Grafton Superior Court for retrial.
B. Find the disorderly conduct statute in whole or in the specific instance as applied here to petitioner to be unconstitutionally vague and overbroad.
C. Grant petitioner a stay in these proceedings so he can prosecute a Motion for New Trial based on Ground Eleven.
D. Grant petitioner leave to retain counsel in the next 30 days and to allow petitioner to amend this petition as need be after effective counsel enters the case and has time to review the materials, matters, and law as it is applied to this case.

Or any other relief to which petitioner may be entitled.

SCOTT TRAUDT
PRO SE
191 Kibling Hill Rd.
Strafford, VT 05072


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was delivered and filed in person this 16th day to the US District Court for the District of New Hampshire.

May 2013

Executed (signed) on May 16, 2013

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.